Minnie DORFMAN
v.
FIRST BOSTON CORPORATION et al.

JUSTER, INC.
v.
FIRST BOSTON CORPORATION et al.
Civ. A. Nos. 70–1845, 71–269.

United States District Court,
E. D. Pennsylvania.
Jan. 13, 1972.

Mitchell A. Kramer, Philadelphia, Pa., for plaintiff Minnie Dorfman.

Herbert I. Deutsch, New York City, for plaintiff Juster, Inc.

Michael A. Cooper, Sullivan & Cromwell, New York City, for defendant First Boston Corporation.

Raymond K. Denworth, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants Otto N. Frenzel, Edward J. Hanley, Franklin J. Lunding, Thomas L. Perkins and Daniel E. Taylor.

Peter Gruenberger, Weil, Gotshal & Manges, New York City, for defendant Glore Staats Corporation.

Tom P. Monteverde, Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa., for Pennsylvania Co. and W. W. Riley.

James M. Marx, Holtzmann, Wise & Shepard, New York City, for defendant Robert S. Odell.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs Minnie Dorfman ("Dorfman") and Juster, Inc. ("Juster") have instituted this action to recover damages resulting from their purchase of Pennsylvania Company ("Pennco") bonds in reliance on an allegedly false and misleading offering circular issued by the defendants in connection with the sale. Plaintiffs bring this action on their own behalf and on behalf of all those similarly situated pursuant to F.R.Civ.P. 23. Plaintiffs assert claims under §§ 12(2), 15 and 17(a) of the Securities Act of 1933 ("Securities Act"); §§ 9(a) (4), 10(b) and 18 of the Securities and Exchange Act of 1934 ("Exchange Act"); and §§ 8, 20a and 20b of the Interstate Commerce Act.

The corporate and firm defendants are Penn Central Transportation Co.

("Transportation Co."), a corporation engaged in the business of railroads; Pennco, a wholly owned subsidiary of Transportation Co. which operates as an investment company and which issued the bonds involved in this action; First Boston Corporation ("First Boston") and Glore Staats Corporation ("Glore"),[1] corporations engaged in the sale and underwriting of investment securities which were the principal and managing underwriters of the Pennco bonds; and Peat, Marwick, Mitchell and Company ("PMM"), a partnership of public accountants who acted as auditors and public accountants for Transportation Co. and Pennco. At all times relevant to this action, the individual defendants were officers and/or directors of Pennco and/or Transportation Co.

A number of defendants[2] ("moving defendants") have moved to dismiss plaintiffs' complaint for failure to state a claim on which relief can be granted, F.R.Civ.P. 12(b) (6), insofar as it asserts claims under §§ 12(2), 15 and 17(a) of the Securities Act, §§ 9(a) (4) and 18 of the Exchange Act and §§ 8, 20a and 20b of the Interstate Commerce Act. Defendants' motion is not directed at claims asserted under § 10(b) of the Exchange Act.

## I. Securities Act

### A. Sections 12(2) and 15

Defendants contend that the complaint fails to state a claim under § 12(2)[3] of

---

1. Glore was formerly known as duPont Glore Forgan Staats Inc., a successor to Glore Forgan, Wm. R. Staats Inc.

2. First Boston, Glore, Pennco, W. W. Riley, Otto N. Frenzel, Edward J. Hanley, F. M. Kirby, Franklin J. Lunding, Robert S. Odell, Thomas L. Perkins, Daniel E. Taylor, and David C. Bevan (with respect to the Dorfman suit only).

3. Section 12(2) reads as follows:
 "Any person who—
 * * * *
 (2) offers or sells a security (whether or not exempted by the provisions of section 3 [15 U.S.C. § 77c], other than

paragraph (2) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have

the Securities Act because § 12(2) creates civil liability only on the part of the seller of a security to the "person purchasing such security from him," and there is no allegation that either plaintiff purchased securities from any of the moving defendants. Defendants recognize that the privity requirement is relaxed when a defendant comes within one of the "control" relationships specified by § 15 of the Securities Act or when a defendant acts through an agent, but defendants assert that neither exception is alleged in plaintiffs' complaint. Jackson Tool & Die, Inc. v. Smith, 339 F.2d 88 (C.A.5, 1964); Winter v. D. J. & M. Investment and Construction Corp., 185 F.Supp. 943, 946 (S.D.Cal.1960); see also III L. Loss, Securities Regulation 1719–1720 (2d ed. 1961).

Plaintiffs argue that a number of cases have relaxed the privity requirement and the need to specify the seller of a security in the complaint particularly when a conspiracy is alleged as in the present complaint. Buchholtz v. Renard, 188 F.Supp. 888 (S.D.N.Y.1960); Bailey v. Huntington Securities Co., 35 F.R.D. 169 (S.D.N.Y.1963); Lennerth v. Mendenhall, 234 F.Supp. 59 (N.D.Ohio, 1964).[4] Plaintiffs' reliance on these cases is misplaced.

Buchholtz v. Renard, *supra*, held that when a seller (principal) sells through a broker who acts as his agent, both the agent and the principal can be held liable under § 12, see Cady v. Murphy, 113 F.2d 988 (C.A.1, 1940), cert. denied 311 U.S. 705, 61 S.Ct. 175, 85 L.Ed. 458 (1940), and the plaintiff's complaint need not identify the particular seller from whom the plaintiff purchased his securities where the principal has affirmatively concealed his identity from the plaintiff. The plaintiffs here have not alleged that the immediate sellers were agents for any of the moving defendants and in fact the offering circular attached to the plaintiffs' complaint indicates that the securities were purchased from Pennco by the underwriters rather than sold by the underwriters as agents of Pennco. Appendix A, pp. 55–57 (referred to in paragraph 29 of Plaintiffs' Consolidated Complaint).

Bailey v. Huntington Securities Co., *supra*, held that specification of particular defendants from whom each plaintiff purchased securities was not required when the complaint alleged a conspiracy among persons in control of the direct seller who allegedly violated the Securities Act. Although the complaint in this action charges a conspiracy among the defendants, there is no allegation that any of the defendants controlled the direct seller from whom the plaintiffs purchased or that the direct seller violated the Securities Act.

Lennerth v. Mendenhall, *supra*, held that an agent who takes an active part in negotiating a sale for the direct seller but who does not actually sign the contract of sale can nevertheless be held liable with the direct seller under § 12. The complaint in the present case, however, fails to allege that any moving defendant played any role in bringing about plaintiffs' purchases much less the kind of active solicitation involved in Lennerth.

█ The privity requirement of § 12 (2) must be read in connection with § 15[5] of the Securities Act which provides

---

known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." [15 U.S.C. § 77*l*]

4. Plaintiffs also cite Fischer v. Kletz, 249 F.Supp. 539 (S.D.N.Y.1966); Gould v. Tricon, Inc., 272 F.Supp. 385 (S.D.N.Y. 1967); Thiele v. Shields, 131 F.Supp. 416 (S.D.N.Y.1955). However, none of these cases involves the issue of privity under § 12(2).

5. Section 15 reads as follows:
"Every person who, by or through stock ownership, agency, or otherwise, or who,

that if an individual controls a person who is liable under § 12, he can be held liable jointly with the controlled person. To establish a § 15 claim, plaintiff must establish that the direct seller is liable under § 12 and that a control relationship existed between the direct seller and the defendant. Winter v. D. J. & M. Investment and Construction Corp., *supra*, 185 F.Supp. at 946–947. The plaintiffs' complaint does not allege that the direct seller sold securities to the plaintiffs in violation of § 12(2) nor does the complaint allege that the named defendants controlled the direct seller. Even accepting plaintiffs' position that § 15 should be liberally construed, there is in the complaint no allegation of control for us to construe.

■ We therefore dismiss the plaintiffs' complaint insofar as it purports to assert claims under §§ 12(2) and 15 of the Securities Act.

### B. Section 17(a)

Defendants argue that plaintiffs have failed to state a claim for relief under § 17(a) [6] of the Securities Act because § 17(a) does not afford a private right of action. Although some courts have implied a private right of action from § 17 (a), Dack v. Shanman, 227 F.Supp. 26 (S.D.N.Y.1964); Pfeffer v. Cressaty, 223 F.Supp. 756 (S.D.N.Y.1963); Thiele v. Shields, 131 F.Supp. 416 (S.D.N.Y. 1955); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787, n. 2 (dictum) (C.A.2, 1951), the Second Circuit has recently questioned this practice and considers the issue an open one. SEC v. Texas Gulf Sulphur, 401 F.2d 833, 864–869 (Friendly, J. concurring) (C.A.2, 1968); Donlon Industries, Inc. v. Forte, 402 F.2d 935, 936 n. 2 (C.A.2, 1968); Globus v. Law Research Service, Inc., 418 F.2d 1276 (C.A.2, 1969), cert. denied 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); Pinto v. Maremont Corp., 326 F.Supp. 165 (S.D.N.Y.1971).

The major argument against the existence of a private right of action under § 17(a) is that such an action would circumvent the express limitations placed on civil remedies by the specific civil liability sections of the Securities Act (§§ 11 and 12, 15 U.S.C. §§ 77k and 77*l*).[7] The specific requirements of § 12 include limitations on who may sue and be sued, the imposition on the defendants of the burden of proof that they reasonably believed their statements to have been true, the discretion in the court to require a bond of plaintiffs [this provision is contained in § 11(e) but also applies to § 12], and the one year statute of limitations (§ 13, 15 U.S.C. § 77m). In addi-

---

pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 11 or 12 [15 U.S.C. §§ 77k, 77*l*], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist. [15 U.S.C. § 77*o*]

6. Section 17(a) reads as follows:
"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or
"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." [15 U.S.C. § 77q(a)]

7. Section 11 concerns civil liability for false registration statements. Section 12 concerns civil liability in connection with prospectuses and communications. Because the present action does not involve any claim under § 11, we will limit our discussion of the specific requirements and limitations of the civil remedy provisions to § 12.

tion, the legislative history of the Securities Act and statements of commentators and draftsmen indicate that § 17(a) was intended to be enforced only by injunctive or criminal action. H.R.Rep.No.85, 73rd Cong., 1st Sess. (1933), pp. 9–10; Landis, Liability Sections of the Securities Act, 18 Am.Accountant 330, 331 (1933); Douglas and Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 181–182 (1933).

In 1942, the Securities and Exchange Commission (SEC) adopted the language of § 17(a) in drafting Rule 10b–5 [8] which was promulgated under the authority of § 10(b) of the 1934 Exchange Act, and the courts have consistently implied a private right of action under § 10(b) and Rule 10b–5. Superintendent of Insurance of State of New York v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed. 128 (1971); Fischman v. Raytheon Mfg. Co., *supra*; McClure v. Borne Chemical Co., Inc., 292 F.2d 824 (C.A.3, 1961), cert. denied, 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339; see cases cited in VI Loss, Securities Regulation (2d Ed.Suppl.1969) pp. 3871–3872. However, the contrast between the provisions of the 1933 and the 1934 acts has been stressed by commentators as supporting the conclusion that a private right of action should not be implied under § 17(a).

"\* \* \* It is one thing to imply a private right of action under § 10(b) or the other provisions of the 1934 act, because the specific liabilities created by §§ 9(e), 16(b) and 18 do not cover all the variegated activities with which that act is concerned. But it is quite another thing to add an implied remedy under § 17(a) of the 1933 act

to the detailed remedies specifically created by §§ 11 and 12. The 1933 act is a much narrower statute. It deals only with disclosure and fraud *in the sale of securities*. It has but two important substantive provisions, §§ .5 and 17(a). Non-compliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But the very restrictions contained in those sections and the differences between them \* \* \* make it seem the less justifiable to permit plaintiffs to circumvent the limitations of § 12 by resort to § 17(a)." III Loss, Securities Regulation (2d ed. 1961), p. 1785 (emphasis in the original).

The major argument in favor of private actions under § 17(a) is the fact that such actions are permitted under § 10(b) of the Exchange Act and Rule 10b–5. Although there is no provision in § 10(b) or the Rule expressly authorizing private damage actions, courts have implied a right of action based on the common law tort doctrine that an injured party has the right to recover damages for injuries sustained as a result of a violation of a statute. Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa. 1946); Restatement (Second) of Torts, § 286 (1965). Given the almost identical language of Rule 10b–5 and § 17(a) and the fact that Rule 10b–5 is a broader provision than § 17(a) in that it covers both

8. Rule 10b–5 reads as follows:
"It shall be unlawful for any person, directly or indirectly, by the use of any *means or instrumentality of interstate* commerce, or of the mails, or of any facility of any national securities exchange,
"(1) to employ any device, scheme, or artifice to defraud,
"(2) to make any untrue statement of a material fact or to omit to state a

material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
"in connection with the purchase or sale of any security." (17 C.F.R. § 240.10b–5)

purchases and sales of securities, there seems to be "little practical point in denying the existence of such an action under § 17." SEC v. Texas Gulf Sulphur Co., *supra*, 401 F.2d at 867 (Friendly, J. concurring).

Two approaches to § 17(a) have been suggested which would permit private actions while avoiding disruption of the statutory scheme of the 1933 act by duplicating the express civil remedy of § 12 without its restrictions. The first approach, developed by several courts which have implied a private right of action under § 17(a), limits recovery under § 17(a) to cases in which the plaintiff alleges and proves fraud. The express civil remedy of § 12 applies to cases of innocent or negligent misstatements in which the reduced burden of proof on the plaintiff is subject to the specific restrictions of the section concerning persons who may sue or be sued, statute of limitations, etc. Section 17(a) affords a private right of action free from the limitations of § 12 because the section refers to conduct involving fraud where the plaintiff has the more difficult burden of proof. Weber v. C. M. P. Corporation, 242 F.Supp. 321 (S.D.N.Y.1965); Thiele v. Shields, *supra*, 131 F.Supp. at 419–420; Fischman v. Raytheon Mfg. Co., *supra*, 188 F.2d at 787, n. 2 (dictum).

However, it has been noted that all of the language of § 17(a) does not refer to misrepresentations amounting to fraud. Although §§ 17(a) (1) and 17 (a) (3) refer to fraud, § 17(a) (2) uses language similar to that of § 12(2) concerning innocent or negligent misrepresentation. The distinction between § 17 (a) (2) and the other clauses of § 17(a) was recognized in Trussel v. United Underwriters, Ltd., 228 F.Supp. 757 (D. Colo.1964), in which the court held that § 12(2) creates an express civil remedy for violations of § 17(a) (2) but that there is no private remedy for violations of §§ 17(a) (1) and 17(a) (3). See also III Loss, Securities Regulation (2d ed. 1961) pp. 1785–1786.

The second approach, suggested by defendants, would subject a private right of action under § 17(a) to the specific limitations imposed upon an action under § 12 which, for purposes of this case, would include the requirement of privity. If we accept the view that a private right of action under §§ 17(a) (1) and 17(a) (3) requires proof of fraud and therefore does not create a remedy which duplicates the one provided by § 12, there is no justification for implying the limitations of § 12 into a private action under these two clauses of § 17(a). However, there is justification for subjecting a private action under § 17(a) (2) to the limitations of § 12 in order to avoid creating a remedy which is similar in scope to § 12 but free of its express restrictions.

■ We agree with Judge Friendly that given the private right of action under § 10(b) there is little practical point in denying such an action under § 17(a). However, we are also persuaded that we should not permit a private action under § 17(a) to circumvent the express civil remedies of the Securities Act. It may well be that the developing case law concerning § 10(b) and Rule 10b–5 will so expand the available remedies for securities violations that the limitations contained in the 1933 act will no longer have significance in securities litigation. Nevertheless, we believe that the deliberate restrictions on claims for relief in the 1933 act should be preserved at least insofar as we are called upon to interpret the scope of sections of that act. We conclude that §§ 17(a) (1) and 17(a) (3) permit private actions for fraud in the offer or sale of securities and that § 17(a) (2) permits private actions subject to the limitations of § 12.

■ Plaintiffs' complaint alleges fraud and therefore asserts a valid claim under §§ 17(a) (1) and 17(a) (3). We therefore deny defendants' motion to dismiss plaintiffs' complaint insofar as it asserts claims under these two clauses of § 17(a). However, we grant defendants' motion insofar as plaintiffs' complaint asserts a claim under § 17(a) (2),

which is subject to the limitations of § 12, because plaintiffs have failed to allege privity necessary to support a claim under § 12.

### C. Tender and Damages

Defendants argue that all claims under the Securities Act should be dismissed because plaintiff Dorfman has not tendered her securities as required by § 12 (2) and neither plaintiff can establish that he has suffered any damages as a result of the defendants' alleged violations of the act. Dorfman alleges that she retains her securities. Therefore, her only remedy under § 12(2) is recission for which tender is a precondition. Pfeffer v. Cressaty, *supra*. However, we have held that plaintiffs' complaint fails to state a claim under § 12(2) although we have upheld the complaint insofar as it asserts a claim for fraud under §§ 17 (a) (1) and 17(a) (3). Therefore, the question before us is whether a plaintiff who alleges a violation of § 17(a) and who has retained the securities is subject to the specific remedy provided by § 12(2).

■ We hold that the implied private action for fraud under § 17(a) is not limited to the specific remedy of recission for plaintiffs who retain their securities as required under § 12. Just as we found no justification for implying the § 12 limitations on persons who may be sued, etc. into § 17(a) actions where the plaintiff has the greater burden of proof to establish fraud, we similarly find no justification for implying § 12 limitations on relief. We hold that a plaintiff who retains securities may sue for damages under §§ 17(a) (1) and 17 (a) (3). Therefore, Dorfman's failure

to allege tender of her securities does not defeat her claim under § 17(a).

■ Defendants' argument that neither plaintiff can establish damages given the present market value of the securities is not properly before the court. Defendants base their position on matters outside the pleadings which we may not consider on a motion to dismiss under F.R.Civ.P. 12(b) (6). We also note that the issue of the proper measure of damages will have to be decided in connection with plaintiffs' claim under § 10(b) of the Exchange Act which is not challenged by defendants' present motion. We therefore deny defendants' motion to dismiss on this ground, without prejudice to their right to renew their motion at an appropriate time.

## II. *Exchange Act*

### A. Section 9(a) (4)

Defendants argue that plaintiffs have failed to state a claim under § 9(a) (4) [9] of the Exchange Act because the section only applies to misleading statements or omissions made concerning "any security registered on a national securities exchange" and plaintiffs have conceded that the Pennco bonds were not listed on a national securities exchange when the offering circular containing alleged misstatements was distributed. Defendants contend that the following section of the complaint establishes that the bonds were not listed on a national securities exchange when they were issued:

"25. * * * In addition, shortly after the initial issuance of the debentures herein described, the debentures were listed and traded on a na-

---

9. Section 9(a) (4) reads as follows:

"(a) It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—

\* \* \* \* \*

"(4) If a dealer or broker, or other person selling or offering for sale or purchasing or offering to purchase the

security, to make, regarding any security registered on a national securities exchange, for the purpose of inducing the purchase or sale of such security, any statement which was at the time and in the light of the circumstances under which it was made, false and misleading with respect to any material fact, and which he knew or had reasonable ground to believe was so false or misleading." [15 U.S.C. § 78i(a) (4)]

tional securities exchange, to wit, the New York Bond Market."

■ Plaintiffs first argue that although the Pennco bonds were initially issued on the over-the-counter bond market, the over-the-counter market is a national securities exchange under the Exchange Act. We reject this contention as contrary to the language of the Exchange Act which clearly distinguishes between securities exchanges which become national securities exchanges pursuant to the registration provision outlined in § 6(a) and the over-the-counter markets which are subject to regulation pursuant to § 15.

■ Plaintiffs next argue that even if the Pennco bonds were not registered on a national securities exchange at the time the allegedly misleading offering circular was distributed, the offering circular was outstanding when the bonds were so listed and constituted a continuing statement which subjects the defendants to § 9(a) (4) liability. Defendants contend that plaintiffs' argument is contrary to the language of the statute and we agree. The language of § 9(a) (4) indicates that statements which allegedly are misleading are to be evaluated as of the time they are made.

"It shall be unlawful * * * to make, regarding any security regis-tered on a national securities exchange, * * * any statement which was *at the time and in the light of the circumstances under which it was made,* false or misleading * * *." (Emphasis added.)

■ The Exchange Act has several provisions which prohibit fraudulent and deceptive practices. Section 9 deals with deceptive practices concerning securities registered on a national securities exchange, § 15 regulates the over-the-counter markets, and § 10(b) covers both. We believe that the most efficient method for determining which section imposes liability for allegedly misleading statements is to evaluate the statement as of the time it was made. We therefore hold that § 9(a) (4) imposes liability only for statements made regarding securities registered on a national securities exchange at the time the statement was initially issued. Plaintiffs concede that the Pennco bonds were not registered on a national securities exchange when the allegedly misleading offering circular was distributed, and we therefore dismiss plaintiffs' complaint insofar as it alleges a cause of action under § 9(a) (4).[10]

**B. Section 18**

■ We find that plaintiffs have failed to state a claim under § 18[11] of

10. We also note that the complaint fails to state a claim under § 9(a) (4) with respect to plaintiff Dorfman on another ground. Section 9(e) provides that only persons who purchase or sell a security at a price that was affected by an act in violation of § 9(a) may sue for resulting injuries. When Dorfman purchased Pennco bonds they were not listed on a national securities exchange. Therefore the offering circular does not qualify at that time as a statement made "regarding any security registered on a national securities exchange" and Dorfman does not qualify as a purchaser who can recover under § 9(e). Because Dorfman continues to hold her bonds, she is not a seller under § 9 (e) and is therefore not entitled to any relief for violation of § 9(a) (4).

11. Section 18(a), which is the relevant part of § 18 for our purposes, reads as follows:

"(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder or any undertaking contained in a registration statement 15 of this title [15 U.S.C. § 78o], which as provided in subsection (d) of section statement was at the time and in light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity

the Exchange Act. Section 18 applies to misleading statements or omissions in documents which are required to be filed with the SEC under the Exchange Act. Gann v. Bernzomatic Corp., 262 F.Supp. 301 (S.D.N.Y.1966). The complaint alleges that the offering circular, which is the only document alleged to include false or misleading statements, was filed with the Interstate Commerce Commission (ICC), and therefore the circular does not constitute a document within the scope of § 18. We therefore grant defendants' motion to dismiss the claim under § 18.

### III. *Interstate Commerce Act*

Defendants argue that plaintiffs have failed to state a claim under §§ 8, 20a and 20b of the Interstate Commerce Act [12] on two grounds. First, § 8 provides relief only for violations of the act by a carrier and the complaint does not allege that any defendant is a carrier. Second, § 8 establishes liability only for a violation of the act, and in the context of the complaint a violation can only be found if defendants failed to comply with the application provisions of § 20a concerning the issuance of securities. Section 20a provides that upon application of the carrier, the ICC shall approve the issuance of a security if such issuance is found to be "for some lawful object within [the] corporate purposes, and compatible with the public interest." 49 U.S.C. § 20a(2). The complaint alleges that the Pennco bonds were approved by the ICC, and therefore even if the complaint could be amended to allege that certain defendants are carriers, no possible violation of § 20a is or can be alleged.

 We agree with the defendants' position and dismiss the complaint for failure to state a claim under §§ 8, 20a and 20b of the Interstate Commerce Act. We also feel it is important to emphasize that our decision does not leave investors in securities issued under the Interstate Commerce Act without any remedy for misstatements or fraud as suggested by the plaintiffs. Although the Securities Act exempts from its provisions "[a]ny security issued by a common or contract carrier, the issuance of which is subject to the provisions of section 20a of Title 49 [Interstate Commerce Act]" [15 U.S.C. § 77c(a) (6)], the Securities Act specifically subjects exempted securities to the requirements and liabilities of §§ 12(2) and 17. See

---

in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant."
[15 U.S.C. § 78r(a)]

12. The relevant sections of §§ 8 and 20a read as follows:
§ 8. Liability in damages to persons injured by violation of law
"In case any common carrier subject to the provisions of this chapter shall do, cause to be done or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." (49 U.S.C. § 8)

§ 20a. Securities of carriers; issuance, etc.

* * * * *

"Issuance of securities; assumption of obligations; authorization
"(2) It shall be unlawful for any carrier to issue any share of capital stock or any bond or other evidence of interest in or indebtedness of the carrier * * * unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission of the purposes and uses of the proposed issue and the proceeds thereof * * * the commission by order authorizes such issue or assumption * * *." (49 U.S.C. § 20a)
Section 20b concerns the modification of railroad financial structures and its provisions are not relevant to the complaint.

Pawgan v. Silverstein, 265 F.Supp. 898 (S.D.N.Y.1967). Therefore, although § 20a of the Interstate Commerce Act only affords limited protection concerning the registration of securities, an investor in a security issued under § 20a is protected against misleading or fraudulent statements under §§ 12(2) and 17 of the Securities Act. In addition, the Exchange Act does not exempt § 20a securities from its coverage.