Harvey **BIRDMAN**

v.

**ELECTRO-CATHETER CORPORATION.**

**Civ. A. No. 71-311.**

United States District Court,
E. D. Pennsylvania.
Jan. 19, 1973.

Neil G. Epstein, Philadelphia, Pa., for plaintiff.

Steven H. Lipsitz, Bressler, Meislin, Tauber & Bressler, New York City, for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action, as alleged in plaintiff's complaint, is based upon violations by the defendant, Electro-Catheter Corporation (hereinafter called "ECC") of Sections 11(a) of the Securities Act of 1933, 15 U.S.C. § 77k, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder.

Plaintiff herein purchased some 7,642 shares of common stock of defendant, ECC, on or about October 7, 1970, approximately one month after the effective date of the registration statement and prospectus involved in this case. The offering was for 60,000 shares of common stock of ECC. However, the greater part of defendant's outstanding shares, some 412,000 were held by various individuals and certain of these shares were exempt from registration under Section 4 of the Securities Act of 1933, 15 U.S.C. § 77d.

On or about May 11, 1970, Mr. Philip Holzer and Mrs. Ruth Dvorak, two individual shareholders of defendant, ECC, requested an opinion from defendant's general counsel relating to the registration *vel non* of their 15,920 shares of common stock under the 1933 Act because they allegedly intended to offer it for sale. Defendant, through its general counsel, responded on May 18, 1970, with a letter advising them in general terms as to the nature of the restrictions upon the transfer of unregistered shares under the Securities Act of 1933. On June 22, 1970, the same shareholders formally requested general counsel of ECC to render an opinion as to "whether those shares may be sold without registration." That letter further stated in part: "We are furnishing you with the following information regarding our intention of selling our shares of [ECC] . . . ." ECC's registration statement and prospectus with regard to the 60,000 shares of common stock of ECC became effective September 1, 1970. On September 21, 1970, Mr. Bernard Bressler responded to the Holzer-Dvorak letter of June 22, 1970, stating that it was the firm's opinion as general counsel for ECC, that they were free to sell their shares of common stock without having registered them under the 1933 Act. At the time this transaction took place, Mr. Bressler was an officer and director of ECC as well as a member of ECC's general counsel. Thereafter, the 15,920 shares were "transferred" to J. W. Gould & Co. for sale in the open market after having first obtained a "no action" letter regarding these shares from the Securities Exchange Commission.

Plaintiff alleges that after he read the ECC Prospectus covering the 60,000 shares offered and supplied to him by his broker in Philadelphia, Pennsylvania, he purchased 7,642 shares of ECC common stock at varying prices in the Over-the-Counter market in reliance on the aforesaid Prospectus. Plaintiff further alleges that the Prospectus which he read failed to mention the probability that the shareholders, Holzer and Dvorak, intended to sell their unregistered shares of common stock which fact, had plaintiff known of such intention, would have influenced his decision to invest in

ECC stock. Plaintiff avers that ECC knew, through communications with the individual shareholders, ECC's general counsel and Bernard Bressler who was then a director of ECC, that Holzer and Dvorak were probably about to sell their shares of stock in the near future and that such fact should have been disclosed in the Prospectus. The unregistered shares represented over 25% of the total number of shares offered in the Prospectus.

Defendant has now moved to dismiss the action on grounds of improper venue, lack of jurisdiction over the person and failure of plaintiff to state a claim for which relief can be granted.

### VENUE UNDER THE 1933 and 1934 ACTS

■ Both the Securities Act of 1933 and the Securities Exchange Act of 1934 contain separate venue statutes, Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) [1] and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.[2] Both the 1933 and 1934 Acts place venue in any district wherein defendant "transacts business." In order for a defendant to be "transacting business" in a given district, its activities (therein) must constitute a substantial part of its ordinary business and must be continuous and of some duration. See United Industrial Corp. v. Nuclear Corp. of America, 237 F.Supp. 971 (D.Del., 1964). ECC concedes that it engaged in the following dollar volume of business in the Eastern District of Pennsylvania and throughout the nation:

(1) From February, 1971—August, 1971—average sales $2,000.00 per month.

(2) For fiscal year September 1, 1971—August 31, 1972—average sales $3,000.00 per month.

(3) Total sales in Pennsylvania for fiscal year ending August 31, 1972—$21,500.00.

(4) Total sales nationwide for fiscal year ending August 31, 1971—$750,000.00.

(5) Total sales nationwide for fiscal year ending August 31, 1972—$1,600,000.00.

Also, ECC, for the fiscal year ending August 31, 1971, sold $1750.00 worth of equipment to Hahneman Hospital in Philadelphia.

■ The Court has no difficulty in finding that defendant is transacting business in the Eastern District of Pennsylvania for purposes of venue under both Securities Acts. ECC concedes that sales in this district amount to roughly two per cent of its total sales nationwide and that these sales have been continuous from February, 1971, to the present.

Because this Court is a proper venue for the institution of this suit, the defendant was properly served with proc-

1. Section 22(a) of Securities Act of 1933:
   The district courts of the United States . . . shall have jurisdiction of offenses and violations under this subchapter . . . and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein. . . .

2. Section 27 of Securities Exchange Act of 1934:
   The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business.

ess, and the Court has jurisdiction over its person under Rule 4(f) of the Federal Rules of Civil Procedure. Section 22(a) of the 1933 Act and Section 27 of the 1934 Act both provide for extraterritorial service of process where venue is proper under either Act.

## FAILURE TO STATE A CLAIM

■ The Court will treat defendant's motion to dismiss for failure to state a claim for which relief can be granted, as a motion for Summary Judgment under Rule 56(b) because several affidavits and representations by counsel not contained in the pleadings are relied on by the Court in reaching its decision. The Court has determined that a genuine material issue of fact does exist which precludes this Court from granting defendant's motion.

The gravamen of plaintiff's action under both Securities Acts is that the defendant knew to a near certainty that two individuals were planning to sell their shares of common stock of ECC shortly after the public offering and that this knowledge was material information not contained in the registration statement nor disclosed in the Prospectus, which omission misled plaintiff as to the number of shares available to the public in the after-market. This allegation states a claim for relief under both Section 11(a) of the 1933 Act and Section 10(b) of the 1934 Act and under Rule 10b–5 promulgated thereunder. Defendant's knowledge *vel non* and the materiality of the information omitted, are disputed issues of fact and cannot be disposed of here by Summary Judgment.

Defendant contends that it complied with all the requirements of the Securities Exchange Commission regarding registration of its shares of stock and that the Prospectus indicated that substantial shares of ECC stock were then outstanding in the hands of the directors as a group and others not so connected with the company. From this, defendant asserts that the Prospectus clearly shows the existence of outstanding common stock of ECC which might have been sold after public offering without registration under the Securities Act of 1933. But plaintiff's allegations go farther. Plaintiff contends that defendant, ECC, through communications between Holzer and Dvorak and defendant's general counsel, knew to a near certainty that Holzer and Dvorak intended to sell their shares of common stock after the public offering and that the sale of this amount of stock equaling 25% of the total public offering, would under the reasonable man standard constitute material information which would substantially influence plaintiff's investment judgment. The omission of such information, if material, would thwart the basic policy of Rule 10b–5 and to a lesser extent, Section 11 of the Securities Act of 1933 which is that all investors have relatively equal access to material information. See SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir., 1968) (en banc) cert. denied 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).