Donald M. COLLINS and John R. Cillag

v.

SIGNETICS CORPORATION and Corning Glass Works.

Civ. A. No. 75–1443.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Oct. 14, 1977.

Daniel I. Murphy, Philadelphia, Pa., for plaintiff.

Henry Kolowrat, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This law suit is a class action seeking damages based on alleged violations of numerous provisions of both the Securities Act of 1933 ('33 Act) and of the Securities Exchange Act of 1934 (Exchange Act) and the rules promulgated under the Exchange Act. Presently before the court are the defendants' motions for summary judgment on the first and second counts of plaintiff's complaint and their motion for redefinition of the class. Also before the court at this time is a motion of the plaintiff to compel discovery and a request renewed in one of plaintiff's memoranda to expand the class.

The factual allegations of the complaint can be briefly summarized as follows. Defendant Signetics Corporation made a public offering of 1,300,000 shares of its common stock pursuant to a registration statement which became effective on November 1, 1973. Defendant Corning Glass Works owned 92% of Signetics Corporation prior to the offering and 70% of that stock subsequent to the offering. At some time before the public offering Corning determined that it would be best to withdraw its investment in Signetics by selling all of its interests therein. Prior to, during, and after the offering Corning Glass Works is alleged to have actively pursued its goal of selling its interest in Signetics Corporation. This information was not disclosed to the public in the offering's registration statement or prospectus even though Signetics Corporation was aware of Corning's intentions and in

fact Signetics' personnel assisted Corning in the search to find a buyer.

One year and one half after the public offering, Corning accomplished its goal of divesting itself of Signetics stock. This was done by arranging a merger of Signetics into a subsidiary of United States Philips Corporation whereby existing shareholders of Signetics would be required to surrender their stock for $8.00 per share in cash. The proxy statement mailed in conjunction with this merger is the subject of the third count of plaintiffs' complaint which is not presently being challenged by defendants' motion for summary judgment.

The record in this case is somewhat confused because plaintiff has apparently expanded its asserted bases of recovery in response to the defendants' motions. Plaintiffs' present theory of the case is most clearly and succinctly set out in a letter to the court dated September 15, 1977 containing factual allegations and to which was attached a "Statement of Legal Theories". For the purposes of these motions, I will treat the allegations and theories presented in this letter and statement as being part of the complaint. I will, however, require that the plaintiffs formally amend their complaint to accurately present the various causes of action.

For the purpose of further clarification, I will summarize what I view to be the current substance of the complaint. The first count is being pursued by plaintiff Cillag for himself and on behalf of the certified class of individuals who purchased Signetics stock on November 1, 1973 for $17.00 per share pursuant to the public offering by Signetics. It asserts that the failure of the defendants to reveal to the public that Corning Glass Works intended to sell its interest in Signetics and was actively seeking a buyer violated sections 11(a), 12(2), 15 and 17(a) of the '33 Act and sections 10(b), 18(a) and 20(a) and the rules and regulations of the Exchange Act. The second count of the complaint is based on the same failure to reveal Corning's intentions with regard to its continued ownership of Signetics stock. The difference between the two

counts is in the plaintiffs. Plaintiff Collins, who purchased his stock on the over-the-counter market on February 1, 1974 for $13.75 per share, seeks damages alleging only violations of the Exchange Act. Plaintiff Cillag also seeks damages under this count, but his claim under this count is identical to his claim under the first count and I will therefore disregard it. Cillag also requests to represent an additional class of defendants under Count II to consist of individuals who purchased stock after the date of the public issuance and continued to hold their stock until the date of the merger.

As to the first count of the complaint, I find that a genuine issue of material fact does exist which precludes the court from granting defendants' motion for summary judgment. In order to simplify future proceedings, however, I believe it is appropriate at this time for me to declare that I find that the complaint does not state a cause of action under either section 12(2) or section 17(a)(2) of the '33 Act and to discuss my reasons for that determination.

■ The plaintiffs did not purchase their shares from either of the defendants, but rather purchased them, either directly or indirectly, from the underwriters of the offering who are not parties to this action. There is no allegation that either defendant controlled any of the underwriters or that the underwriters acted as agents for the defendants. The relevant text of section 12 is:

Any person who—

. . . . .

(2) offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care

could not have known of such untruth or omission,

shall be *liable to the person purchasing such security from him* . . . .

15 U.S.C. § 77*l* (1970) (emphasis added). Thus, by the literal terms of the section, the defendants are not liable to the plaintiffs because the plaintiffs are not people "purchasing from [them]".

 In the absence of some special relationship between the defendant and the actual seller, courts have consistently held that the absence of buyer-seller privity is fatal to a claim based on section 12(2). *B&B Investment Club v. Kleinert's Inc.*, 391 F.Supp. 720, 725–26 (E.D.Pa.1975); *Kramer v. Scientific Control Corp.*, 365 F.Supp. 780, 791 (E.D.Pa.1973); *duPont v. Wyly*, 61 F.R.D. 615, 626 (D.Del.1973); *Dorfman v. First Boston Corp.*, 336 F.Supp. 1089, 1091–93 (E.D.Pa.1972).

The cases that have allowed recovery despite the absence of strict privity have relied on the factual peculiarities not present in this case. For example, in *Buchholtz v. Renard*, 188 F.Supp. 888 (S.D.N.Y.1960), the defendant was held accountable under section 12(2) because the court found the actual seller to have acted as the agent for the defendant. Also, in *Lennerth v. Mendenhall*, 234 F.Supp. 59 (N.D.Ohio 1964), the court found that although the defendant was not a party to the actual contract of sale, he had actively participated in the sale negotiations and was therefore a culpable party. *See also Lewis v. Walston*, 487 F.2d 617 (5th Cir. 1973); *Hill Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir. 1971).

The defendants in this case are the corporation issuing the stock in question and its controlling corporation. The stock was sold to the plaintiffs by underwriters whose participation was governed by a "firm commitment" underwriting agreement. The defendants participated in the sale only by preparing and submitting to the Securities and Exchange Commission a registration statement which contained the prospectus used in marketing the shares. Liability for faulty registration statements is governed by section 11 of the '33 Act (15 U.S.C. § 77k), and I do not believe that Congress intended liability to be based on section 12 when a defendant's only connection with the sale of stock to a particular plaintiff is the preparation of the prospectus and sale to an underwriter. Therefore, plaintiffs in this case have not stated a cause of action under section 12 of the '33 Act.

 The defendants in this case are also charged with violating section 17(a) of the '33 Act. That section does not contain an express civil remedy for private parties but several courts have been willing to imply one. The issue of an implied remedy under this section was ably discussed by Chief Judge Lord of this district in *Dorfman v. First Boston Corp.*, 336 F.Supp. 1089, 1093–95 (E.D.Pa.1972). He concluded that since the language of section 17(a)(2) is quite similar to the language of section 12(2), any implied remedy under section 17(a)(2) should be subject to the same limitations that Congress expressly provided in section 12. I agree with both the reasoning and conclusions of Judge Lord, and, therefore, find that insofar as plaintiff's complaint asserts a claim under section 17(a)(2), it is deficient because of the lack of buyer-seller privity between plaintiffs and defendants.

 It would not be proper to enter summary judgment on count I of the complaint at this time, however, because there remain contested issues of fact with respect to plaintiffs' claims based on section 11 of the '33 Act and the claims of fraud based on both the '33 Act and the Exchange Act. Plaintiffs' complaint does state a cause of action under these provisions. *Birdman v. Electro-Catheter Corp.*, 352 F.Supp. 1271, 1274 (E.D.Pa.1973). The issues of fact that remain to be resolved include the materiality of the alleged omissions and the plaintiffs' reliance thereon.

The defendants' motion for summary judgment on the second count of the complaint is based on a mistaken interpretation of the assertions of that count. Defendants contend that the plaintiff is seeking dam-

ages because the failure to disclose the intention of Corning Glass Works to sell its Signetics stock induced the plaintiff not to sell their stock. If this interpretation of the complaint were correct, dismissal of the second count would be correct on the authority of *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). My reading of the second count, however, is that plaintiff Collins is seeking redress in the same manner and for the same reason as the plaintiffs in the first count. His allegations are placed in a second count apparently because he purchased his shares after the November 1, 1973 public offering and from the over-the-counter market, not the underwriters of the issue. The defendants' motion for summary judgment as to count II will, therefore, also be denied.

Plaintiff Cillag seeks at this time to have the court certify an additional class of defendants under count II which is to include individuals who purchased after the November 1, 1973 public offering and held their stock until the time of the merger. I do not think, however, that it would be wise at this stage of the proceedings to further expand the class of plaintiffs and, therefore, decline the invitation to do so.

The defendants, in addition to their motions for summary judgment, have presented a motion for redefinition of the class. That motion, however, is predicated on summary judgment being entered on the first and second counts of the complaint. Since I have denied the motions for summary judgment, I need not address the motion for redefinition of the class.

Finally, I am presented with the plaintiffs' motion to compel discovery. The defendants have resisted answering certain interrogatories during the pendency of their summary judgment motions. Since those motions have been denied, I assume that the dispute over discovery will resolve itself without an express ruling on the plaintiffs' motion. I will, therefore, express no view on the merits of that motion at this time.