**Stanley S. WULC**

v.

**GULF & WESTERN INDUSTRIES, INC., et al.**

**Civ. A. No. 75–258.**

United States District Court,
E. D. Pennsylvania.

Aug. 5, 1975.

Edwin P. Rome, Edward W. Stern, William E. Taylor, III, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for plaintiff.

Charles I. Thompson, Jr., Matthew M. Strickler, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN, District Judge.

This private civil damage action alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 of the SEC (Count No. 1); Section 17(a) of the Securities Act of 1933 (Count No. 2); and Sections 14(a) and (e) of the Securities Exchange Act of 1934 (Count No. 3). Counts 4 through 8 inclusive allege state common-law causes of action for breach of contract, tortious interference with contractual relations, conspiracy and fraud. Jurisdiction as to Counts 4 through 8 inclusive is based on pendent jurisdiction, and, in addition, as to certain counts, diversity of citizenship. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (5), (6) and (7). Basically defendants contend that the complaint fails to allege any civil cause of action under the Securities Exchange Act of 1934 or the Securities Act of 1933, and, as a corollary, that all pendent causes of action therefore fail. As to diversity jurisdiction, defendants attack the service of process as going beyond the permissible constitutional reach of any state "long arm" statute. Defendants concede, however, that if a valid securities law violation is stated, service of process is valid under special federal statutes applicable to such service.

Elco Corporation (Elco) and Gulf and Western Industries, Inc. (G&W) agreed through their respective boards of directors to a merger. G&W was to purchase at a fixed valuation all of the Elco stock and then Elco was to be merged into a wholly owned G&W subsidiary.

Plaintiff was a director, vice-president and "chief operating officer" of Elco, but he owned no stock in Elco. Plaintiff, as an employee-officer of Elco, was the beneficiary of a stock-option plan, under the terms of which the option could not be exercised until a date subsequent to the date of the proposed merger. Under the merger plan, G&W assumed liability for the stock options held by plaintiff (and presumedly other employees holding stock option rights), by agreeing to issue G&W stock at a set valuation to those Elco option holders who would subsequently exercise the option rights.

Plaintiff alleges that G&W, and the defendants associated with G&W, made binding personal promises to him, prior to the merger, in order to induce him as a director and officer of Elco to support the merger. The merger required both Elco and G&W shareholder approval.

The promises in effect were that plaintiff would remain as chief executive officer in line for the presidency of Elco, and that Elco would retain its corporate identity, independence and autonomy. Plaintiff alleges not only breach of these promises, but common-law fraud in that defendants, at the time of making the promises, never intended to carry them out. Additionally, plaintiff alleges a fraudulent breach of the agreement of merger as to G&W's agreeing to assume liability for Elco stock options, in that defendants failed, and in fact never intended, to register timely the required stock issue with the SEC. Plaintiff is no longer an employee of Elco. Whether he resigned or was terminated by Elco does not appear from the pleadings.

Count No. 1—10(b) and 10(b)–5 Violations.

■■ Defendants contend that plaintiff was neither a purchaser nor a seller of a security, since he never owned stock in Elco or G&W. Defendants, therefore, contend that plaintiff is not within the class of persons protected by Section 10(b) of the Securities Exchange Act of 1934. Whatever uncertainty there may have been as to the validity of the long-standing Birnbaum Rule (*Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), such has been put to rest by *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). *Blue Chips*, in reaffirming the validity of *Birnbaum*, requires a plaintiff to be either a purchaser or seller of a security, in order to state a cause of action under Section 10(b). The Court, however, expressly noted in *Blue Chips, supra*, at 750, 95 S.Ct. at 1932:

> A contract to purchase or sell securities is expressly defined by § 3(a) of the 1934 Act, 15 U.S.C. § 78c(a), as a purchase or sale of securities for the purposes of that Act. Unlike respondent, who had no contractual right or duty to purchase Blue Chips securities, the holders of puts, calls, options

and other contractual rights or duties to purchase or sell securities have been recognized as "purchasers" or "sellers" of securities for purposes of Rule 10b–5, not because of a judicial conclusion that they were similarly situated to "purchasers" or "sellers", but because the definitional provisions of the 1934 Act themselves grant them such a status. (footnote omitted).

The statute provides in Section 3(a)(13) that the terms "buy" and "purchase" each include any contract to buy, purchase or otherwise acquire. Similarly the terms "sale" and "sell" each include any contract to sell or otherwise *dispose of a security. An option is a contract, and comes within the definition of a "security" under the statutes.

■ Plaintiff held options to Elco stock. Under the merger plan, these were to be assumed by G&W and exchanged for G&W stock options. Upon the merger of a corporation, in which the stock of one corporation is to be exchanged for that of another, the shareholders are "sellers" and "purchasers" of stock for purposes of Section 10(b), albeit they are "forced" buyers and sellers. *In Re Penn Central Securities Litigation*, 494 F.2d 528 (3d Cir. 1974). This same doctrine must apply to holders of stock options who are holders of a "security" as defined by the statute.

■ Plaintiff alleges an intentional pre-conceived plan and scheme by defendants to induce plaintiff's support of the merger plan, by making him promises that were never intended to be carried out, and which in fact never were carried out. Although such may well constitute a "garden variety" common-law fraud amenable to state court action, it likewise may constitute a "garden variety" Section 10(b) fraud under the Securities Exchange Act of 1934. Common-law fraudulent schemes do not divest federal courts from adjudicating civil liability for violation of the federal securities acts.

■ Count No. 1 states a valid Section 10(b) cause of action.

Count No. 2—Section 17(a) Violations.

■ Defendants contend that there is no private cause of action for violation of Section 17(a) of the Securities Act of 1933, upon which Count 2 is founded. *Blue Chips Stamps v. Manor Drug Stores, supra,* 421 U.S. at 734, 95 S.Ct. at 1924, left this question expressly open by stating in footnote 6:

> We express, of course, no opinion on whether 17(a) in light of the express civil remedies of the 1933 Act gives rise to an implied cause of action. Compare *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 788, 791 (CA 8 1967), with *Fischman v. Raytheon Mfg. Corp.,* 188 F.2d 783, 787 (CA 2 1951). See, e. g., *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (CA 2 1968) (Opinion of Friendly, J., concurring), *cert. denied,* 394 U.S. 976 [89 S.Ct. 1454, 22 L.Ed.2d 756] (1969); 3 L. Loss, Securities Regulation 1785 (1961).

There likewise appears to be no definitive ruling on the subject from the Third Circuit Court of Appeals. Chief Judge Lord, of this court, in *Dorfman v. First Boston Corporation,* 336 F.Supp. 1089 (E.D.Pa.1972), after a careful and thorough analysis concluded that there could be a private cause of action under 17(a)(1) and (3), free from the limitations of Section 12, but that 17(a)(2) would be subject to such limitations. In *Sley v. Jamaica Water and Utilities, Inc.* (E.D.Pa. Civil Action 70–2974), I accepted the *Dorfman* rule as correct. I continue to do so.

Plaintiff was never issued any stock options to G&W stock. Whether this was occasioned by failure on the part of G&W to register the stock in a timely manner, or by the termination of plaintiff's employment prior to any date on which an option could be exercised is a factual issue that is immaterial to the present motion. Section 17(a) expressly includes within its wording devices, schemes, or artifices to defraud "in the *offer* or sale of any securities." See footnote 6 of *Blue Chips,* 421 U.S. at 733, 95 S.Ct. 1917, as to this vital distinction between Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934.

■ Count No. 2 states a valid cause of action under Section 17(a) of the Securities Act of 1933.

Count No. 3—Section 14(a) and (e) Violations.

Count No. 3 alleges that false and misleading information was sent by defendants to shareholders in the proxy solicitations for the merger vote and in the tender offer to purchase Elco stock in violation of Sections 14(a) and (e) of the Securities Act of 1934, respectively.

■ Whatever uncertainty there may be as to private causes of action under Section 17(a) of the Securities Act of 1933, it is clear that there is a private civil cause of action for "all necessary relief" under Section 14(a) of the Securities Exchange Act of 1934. *J. I. Case Co. v. Borak,* 377 U.S. 426, 435, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Such relief may include monetary damages. *Mills v. Electric Auto-Lite,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1964). Left unanswered, however, is the class of persons to whom a private cause of action is extended under § 14.

■■ Section 14(a) deals with misleading proxy statements. *Borak* held that the private right of action under § 14(a) extended to a shareholder who had been solicited by the proxy. As the court later stressed in *Mills, supra* at 381, 90 S.Ct. at 620, § 14(a) was intended to protect corporate suffrage and thus "promote 'the free exercise of the voting rights of stockholders'." Thus, to have standing under § 14(a), the plaintiff is required to be a shareholder with voting rights in order to establish a nexus with the statute. As Chief Judge Lord observed:

> Section 14 protects investors in their status *as shareholders* by providing a cause of action for misleading

proxy statements which affect the corporate voting process. In order to state a cause of action under § 14(a), a *stockholder* must establish that he *was damaged by an infringement* of corporate suffrage rights. (emphasis added).

*In Re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1342 (E.D.Pa. 1972), *aff'd* 494 F.2d 528 (3d Cir. 1974). Recently a warrant holder was denied standing in a § 14(a) case. *Werfel v. Kramarsky*, 61 F.R.D. 674 (S.D. N.Y.1974). The court's reasoning was that since a private right of action under § 14(a) exists only to protect corporate suffrage, a warrant holder, who has no voting rights, lacks standing since no voting rights exist and suffrage is not affected. The logic of *Werfel* is wholly applicable to the instant case in that an option holder and a warrant holder, while both "security holders" have no suffrage rights. In the context of § 14(a), an option holder has no standing to pursue a private cause of action.

■■■■ A private right of action exists in the case of a misleading tender offer under § 14(e). *Chris-Craft Industries, Inc. v. Piper Aircraft*, 480 F.2d 341 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937 (2d Cir. 1969). But the "security holders" protected by § 14(e) are "those security holders to whom the [tender] offer is addressed." *Sargent v. Genesco, Inc.*, 492 F.2d 750, 769 (5th Cir. 1974). The policy of § 14(e) and the overriding

purpose behind it is the protection of the investing shareholder who must make an informed investment decision from the data contained in the tender offer. *Sargent v. Genesco, supra* at 769; *Ronson Corp. v. Liquifin Aktiengesellschaft*, D.C.N.J., 370 F.Supp. 597, 601, *aff'd*, 497 F.2d 394 (3d Cir.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L. Ed.2d 108 (1974). As a holder of non-transferrable option rights without suffrage rights, plaintiff had no investment decision to make, and is, therefore, without standing.[1] Thus, no claim has been stated under either § 14(a) or § 14(e).

"Pari-Delicto" Doctrine.

Defendants contend that in any event plaintiff may not maintain his action because he was in *pari-delicto* with defendants. This is based on the premise that the fraud or misstatements concerned failure to advise the shareholders of the unannounced agreement between defendants and plaintiff as to the plans to retain plaintiff as the senior ranking official, and the other alleged promises made to plaintiff. Defendants contend if they have a duty to disclose, plaintiff, as a corporate official and director, likewise had a duty so to do.

■■■ This defense at best requires a full development of the facts as to what disclosures were made and what were not, the full terms of the agreement, if any, between defendants and plaintiff, the duties and responsibilities of plaintiff, whether plaintiff was aware of any failure to disclose, and other similar issues. Deciding this on a motion to dismiss would, therefore, be inappropriate.

---

1. Since plaintiff was not a shareholder capable of making an investment decision from the tender offer, his position differed from that of a shareholder of the target corporation who has standing whether shares are tendered or not. *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937 (2d Cir. 1969); *Petersen v. Federated Development Co.*, 387 F.Supp. 355 (S.D.N.Y. 1974). There are cases which have granted standing in § 14(e) cases to the shareholders of the tender offeror. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973); *Dyer v. Eastern Trust and Banking Co.*, 336 F.Supp. 890

(D.Me.1971); and to the tender offeror corporation on behalf of its shareholders, *H. K. Porter Co., Inc. v. Nicholson File Co.*, 353 F.Supp. 153 (D.R.I.1973). Judge Gignoux, in *Dyer*, was of the opinion that the tender offeror was within the class of the persons to be protected under § 14(e). *Porter* relies upon *Dyer* and *Crane v. Westinghouse Air Brake Co.*, 419 F.2d 787 (2d Cir. 1969), which was not a § 14(e) case. *Id.* at 799. *Chris-Craft* was premised upon the court's finding that the plaintiff was placed in the position of a minority shareholder. These cases are not analogous to the instant case.

■ The basic error with defendants' *pari-delicto* argument is that it overlooks the real gravamen of plaintiff's claims. Plaintiff does not complain that the agreement was reached between plaintiff and defendants, or that the promises were made. His complaint is that although such promises were made, defendants not only broke the promises but never intended to carry them out when made. This, of course, under plaintiff's theory was wholly unknown to him. Consequently, he could not have disclosed such a scheme to the shareholders or board of directors. Clearly, under this theory, the parties were not *pari-delicto*.

### Counts Nos. 4 through 8.

■ Having ruled that plaintiff has stated valid causes of action under Sections 10(b) of the Securities Exchange Act of 1934 and 17(a) of the Securities Act of 1933, there appears to be valid grounds to maintain the state causes of action under the doctrine of pendent jurisdiction. Likewise, there having been obtained proper personal jurisdiction over the defendants on the claims asserted under the federal securities laws, and there being proper allegations of diversity jurisdiction, the motion to quash service on the nonresident defendants as to the diversity causes of action must be denied. The length to which Pennsylvania's "long-arm" statutes may constitutionally stretch need not be decided on the pending motions.

And now, this 5th day of August, 1975, defendants' motion to dismiss plaintiff's complaint or, in the alternative, to quash service as to defendants Bluhorn, Judelson, Spriegel and Zack is denied and dismissed, except as to Count No. 3 which attempts to assert claims under Sections 14(a) and 14(e) of the Securities Exchange Act of 1934, which motion is granted and Count No. 3 is dismissed.