In re WASHINGTON PUBLIC POWER SUPPLY SYSTEM SECURITIES LITIGATION.

Henry PUCHALL, et al., Plaintiffs-Appellants,

v.

HOUGHTON, CLUCK, COUGHLIN & RILEY, et al., Defendants-Appellees.

No. 86–3594.

United States Court of Appeals, Ninth Circuit.

Argued En Banc and Submitted April 21, 1987.

Decided July 30, 1987.

Leonard B. Simon, San Diego, Cal., for plaintiffs-appellants.

Daniel R. Murdock, Herbert M. Wachtell, New York City, and Camden M. Hall, Michael Sandler, Foster, Pepper & Riviera, Seattle, Wash., for defendants-appellees.

Before GOODWIN, KENNEDY, ANDERSON, TANG, NELSON, NORRIS, HALL, WIGGINS, BRUNETTI, KOZINSKI, and THOMPSON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

## I.

Between 1977 and 1981, the Washington Public Power Supply System (WPPSS) sold bonds with a face value of $2.25 billion to finance construction of two nuclear power plants. In 1982 WPPSS ceased construction of these plants and thereafter defaulted on the bond payments. In 1983 plaintiffs-appellants, purchasers of WPPSS bonds, filed a class action, on behalf of themselves and all others who purchased the bonds between February 23, 1977 and June 15, 1983, against WPPSS and nearly 200 other defendants alleging that the bonds were sold "on false pretenses" in violation of both federal and state securities laws.

District Judge Richard Bilby denied a motion by the defendants to dismiss the plaintiffs' claims under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Thereafter, Judge Bilby noted that he must recuse himself. The case was then transferred to District Judge William Browning, who vacated Judge Bilby's ruling on the section 17(a) claims. Judge Browning concluded that "in litigation as massive and complex as this, a record as unimpeachable as possible was essential." *In re Washington Public Power Supply System Securities Litigation,* 623 F.Supp. 1466, 1470 (W.D.Wash.1985). He therefore decided to "revisit" Judge Bilby's substantive rulings, including the ruling on section 17(a). *Id.*

On December 3, 1985, Judge Browning granted the defendants' motion to dismiss all section 17(a) claims. *Id.* at 1474–76. Judge Browning certified his interlocutory order for immediate appeal pursuant to 28 U.S.C. § 1292(b), stating that his ruling was "in apparent conflict with existing Ninth Circuit authority, and it involves a controlling issue of law as to which there is substantial ground for difference of opinion, and an immediate appeal may materially advance the litigation." *Id.* at 1476. Plaintiffs timely petitioned this court for permission to file an interlocutory appeal, which petition this court granted.

Plaintiffs then moved this court for summary reversal of the district court's order dismissing their section 17(a) claims. This court granted the plaintiffs' motion for summary reversal relying on *Mosher v. Kane,* 784 F.2d 1385 (9th Cir.1986), and *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981). Thereafter we granted a suggestion for rehearing en banc to decide whether to overrule these two cases. Having considered the briefs and oral argument, we address the following question: Will a private action lie under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a)?

## II.

In our earlier decisions of *Stephenson,* 652 F.2d at 815, and *Mosher,* 784 F.2d at 1390 n. 9, we had found the existence of a private right of action under section 17(a).[1]

---

1. Section 17(a) provides:
   It shall be unlawful for any person in the offer or sale of any securities by the use of any

means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

Plaintiffs contend that these decisions were correctly reasoned and that the principle of stare decisis weighs against reaching a contrary holding in the absence of Supreme Court guidance on the issue. Bearing this in mind, we now reexamine the reasoning supporting *Stephenson* and its progeny and we review the impact that those cases have had on the jurisprudence of our circuit. We conclude the *Stephenson* and *Mosher* were incorrectly decided and are no longer controlling precedent in this circuit.

In *Stephenson,* we were presented with an appeal from a summary judgment for the defendants in a private action for damages brought under various sections of the federal securities laws. The plaintiffs' fourth cause of action alleged a claim under section 17(a). After stating that the Supreme Court had not decided the issue, we held that a private right of action existed because of authority for that proposition emanating from the Second Circuit. *Stephenson,* 652 F.2d at 815 (citing *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J., concurring), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)).

In reaching this conclusion, we did not fully examine the reasons underlying the Second Circuit's ruling nor did we apply the Supreme Court's analysis in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In particular, in *Stephenson* our court did not consider (1) Judge Friendly's reliance on the assumed applicability in section 17(a) cases of the scienter standard required in private actions under section 10(b) of the Securities Exchange Act of 1934 and (2) the implications of the Supreme Court's adoption of a scienter standard for use in section 17(a)(1) cases and a

negligence standard for use in actions brought under sections 17(a)(2) and (3), as set forth in *Aaron v. SEC,* 446 U.S. 680, 701–02, 100 S.Ct. 1945, 1958, 64 L.Ed.2d 611 (1979). Our court also did not engage in any attempt to distinguish among the three subsections of section 17(a) in order to discern whether a private action could exist for one subsection but not for another. Indeed, with the exception of the citation to sister circuit authority, we did not engage in any attempt to analyze the intent of Congress with respect to the existence of private actions under section 17(a).[2]

We now recognize that our court's citation to Second Circuit authority misinterpreted that authority. In *Stephenson,* we quoted language appearing in *Kirshner* which itself was a flawed restatement of the issue addressed by Judge Friendly in his *Texas Gulf Sulphur* concurrence. *Stephenson* and *Kirshner* relied solely on a portion of the following argument from *Texas Gulf Sulphur:*

> Once it had been established, however, that an aggrieved buyer has a private action under § 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under § 17—with the important proviso that fraud, as distinct from mere negligence, must be alleged.

401 F.2d at 867. In *Stephenson,* our court misquoted Judge Friendly, as did the Second Circuit in *Kirshner,* omitting "the important proviso that fraud, as distinct from mere negligence, must be alleged." *See Stephenson,* 652 F.2d at 815; *Kirshner,* 603 F.2d at 241.

The omission has grown in importance as the standard of conduct governing actions under the federal securities laws has become more refined. In *Aaron,* 446 U.S. at 695–97, 100 S.Ct. at 1955–56, the Supreme Court held that negligence—and not scien-

(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a) (1982).

**2.** *See Bruns v. Ledbetter,* 583 F.Supp. 1050, 1053 (S.D.Cal.1984).

ter—suffices to support a SEC injunction action under sections 17(a)(2) and (a)(3).[3] The *Aaron* decision suggests that if section 17(a) could support any implied action, a scienter standard would govern only a private section 17(a)(1) action. As the Supreme Court earlier held, a private section 10(b) action is governed by the scienter standard only because Congress so intended. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208–10, 96 S.Ct. 1375, 1388–89, 47 L.Ed.2d 668 (1976). Since the *Aaron* Court held that the language of section 17(a) revealed that Congress did not intend to limit sections 17(a)(2) and (3) to actions alleging scienter, the same rule should apply to private actions.

In *Stephenson*, we relied on "the minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act." 652 F.2d at 815.[4] *Aaron* dispels any expectation of uniformity in the treatment of section 17(a) and section 10(b). 446 U.S. at 695–97, 100 S.Ct. at 1955–56. The difference in the standards would have the practical effect of eliminating any need to show scienter or, for that matter, to proceed under section 10(b). The likelihood that these differences would have such an important practical effect existed at the time *Stephenson* was decided. However, because our opinion relied categorically on

citations to *Kirshner* and *Texas Gulf Sulphur*, it is apparent that we did not perceive the problem. Although we were not aware of it at the time, in establishing a private right of action under sections 17(a)(2) and (3), for which an allegation of fraud would likely not be required, our court was exceeding the limits of the cited authority and embarking on a course fraught with danger.

We relied on *Stephenson* in two later cases without any significant reexamination of the issue. In *Feldman v. Simkins Industries, Inc.*, 679 F.2d 1299, 1305 (9th Cir.1982), we stated that for purposes of disclosure duties, sections 10(b) and 17(a) could be viewed as "coterminous." In *Mosher*, 784 F.2d at 1390 n. 9, after recognizing the fact that various circuits have split on the issue, we followed *Stephenson* and recognized an implied right of action because we believed that it was "the better view." It is evident, however, that neither of the cases we have decided since *Stephenson* add support to its holding. In fact, the three cases, *Stephenson*, *Feldman*, and *Mosher*, are properly treated as turning solely on a misreading of Second Circuit authority which has been undermined by the Supreme Court's decision in *Aaron*.[5]

---

3. *Aaron* was a public SEC enforcement action under section 17(a). The Supreme Court has not decided whether the same standard would apply in a private section 17(a) action or even whether a private section 17(a) action exists. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 304 n. 9, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215 (1985); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734 n. 6, 95 S.Ct. 1917, 1924, n. 6, 44 L.Ed.2d 539 (1975); *see also Mosher v. Kane*, 784 F.2d 1385, 1390 n. 9 (9th Cir.1986).

4. *See also Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978) ("[T]here was little practical point in denying the existence of an action under § 17 once it is established that an aggrieved buyer has a private action under § 10(b)."), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

5. Plaintiffs point to decisions in other circuits, which uphold an implied private right of action under section 17(a), as persuasive authority. A review of the circuits, however, shows a tendency to disallow a private right of action. Even those circuits which had implied private actions have recently reversed or modified their prior positions. The Fifth Circuit, applying the *Cort v. Ash* analysis, flatly rejected private section 17(a) actions in *Landry v. All American Assurance Co.*, 688 F.2d 381, 387–91 (5th Cir.1982). The Eighth Circuit squarely reaffirmed its rule that "there is no private right of action for violations of § 17(a)" in *Deviries v. Prudential-Bache Securities, Inc.*, 805 F.2d 326, 328 (8th Cir.1986). *See also Brannan v. Eisenstein*, 804 F.2d 1041, 1043 n. 1 (8th Cir.1986). The Tenth Circuit expressed "considerable doubt" as to whether a private right of action exists under section 17(a) in *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 689 n. 1 (10th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). The Second Circuit has indicated a willingness to reexamine *Kirshner* in which it held that the "minimal differences" between section 10(b) and section 17(a) justified

## III.

The Supreme Court, in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), set out the analysis to be applied in determining whether a private remedy is implicit in a statute not expressly providing one:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (emphasis in original; citations omitted).

The Supreme Court recently reaffirmed *Cort v. Ash* and emphasized that the second and third factors—congressional intent and statutory consistency—constitute the " 'essential predicate for implication of a private remedy.' " *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)).

Plaintiffs must establish that Congress intended to provide for the private remedy which they ask us to imply or at least that it is consistent with the legislative scheme. While a private remedy may be inferred from the plain language of the statute, the statutory structure, or some other source, we " 'will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide,' " even if the plaintiff can show that he is a member of the class for whose benefit the statute was enacted and that there is no state-law impediment to implication of a remedy. *Id.* (quoting *California v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)).[6]

We first examine the language of section 17(a) in light of the legislative history and statutory structure of the Securities Act of 1933. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–18, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979); *Landry v. All American Assurance Co.*, 688 F.2d 381, 389 & n. 31 (5th Cir.1982). The language of section 17(a) reveals no intent to create a private remedy. It merely represents a general censure of fraudulent practices. *Landry*, 688 F.2d at 389.[7] Indeed, Congress provided the Securities

---

implying a private action under section 17(a). *See Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985). The Fourth Circuit has also indicated a lack of confidence in its prior recognition of a private section 17(a) cause of action. *See SEC v. American Realty Trust*, 586 F.2d 1001, 1006–07 (4th Cir. 1978). The Seventh Circuit has declared that the issue is now an "open question." *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–31 (7th Cir.1985); *see also Ray v. Karris*, 780 F.2d 636, 641 n. 3 (7th Cir.1985). Although the Third Circuit has yet to address the issue, the clear trend among the district courts of that circuit has been against implying a private right of action under § 17(a). *Mursau Corp. v. Florida Penn Oil & Gas, Inc.*, 638 F.Supp. 259, 261 (W.D.Pa.1986), *aff'd* (without opinion), 813 F.2d 398 (3d Cir.1987); *see also Pennington v. Thomas McKinnon Securities, Inc.*, No. 86–3672 (E.D.Pa.Dec. 24, 1986) (available on *Westlaw*, DCT database). Moreover, in carefully reasoned opinions, the Supreme Court of Delaware and two New York State appellate courts have recently refused to imply a private action under section 17(a). *Mann v. Oppenheimer & Co.*, 517 A.2d 1056 (Del.1986); *CPC International, Inc. v. McKesson Corp.*, 120 A.D.2d 221, 507 N.Y.S.2d 984 (1986), *appeal granted*, 69 N.Y.2d 607, 507 N.E.2d 321 (1987); *Mauersberg v. E.F. Hutton & Co.*, 116 A.D.2d 417, 501 N.Y.S.2d 748 (1986).

6. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979) ("The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.").

7. *See also Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 155 (8th Cir.1977) ("Section 17(a) ... does not confer in [its] terms a private cause of action in favor of a person who purchases a security that has been sold to him in violation of [that] section."), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

Exchange Commission (SEC) with specific procedures to enforce section 17(a) in sections 20 and 24, indicating that Congress did not intend to create private remedies under section 17(a), but rather that Congress sought to supplement the protections afforded to investors under sections 5, 11, and 12 by giving the Commission the power to deal with flagrant cases of abuse by means of sections 17, 20, and 24.[8]

Plaintiffs nevertheless contend that section 17(a) satisfies the first requirement of the *Cort v. Ash* test, that is, that section 17(a) was enacted for the "especial benefit" of investors and therefore creates "a federal right in favor of the plaintiff[s]." *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088. We need not decide whether the first prong of *Cort v. Ash* is satisfied.[9] Even if the first factor were satisfied, we find that the plaintiffs have failed to clear the second and the third *Cort v. Ash* hurdles, that is, plaintiffs have failed to provide evidence of legislative intent to create or reaffirm a private remedy under section 17(a) and plaintiffs have failed to show that such a private remedy would be consistent with the purposes underlying the legislative scheme of which section 17(a) is a part. As the Supreme Court declared in *Russell*, a failure to satisfy these two factors is determinative. 473 U.S. at 145, 105 S.Ct. at 3092; *id.* at 154 n. 11, 105 S.Ct. at 143 n. 11 (concurring opinion).

■ In face of the plain language of section 17(a), there is no reason to infer a private remedy in favor of some individuals where "Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition." *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 691, 99 S.Ct. 1946, 1955, 60 L.Ed.2d 560 (1979)).[10] Moreover, Congress' inclusion of sections 11 and 12 of the Securities Act shows that when Congress wished to provide a private damages remedy, it knew how to do it and it did so expressly. *Coutu*, 450 U.S. at 773, 101 S.Ct. at 1462; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979). Plaintiffs point out that all of the antifraud provisions of the Securities Act are specifically designed to protect investors, relying on *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). However, unlike the situation present in *Bateman Eichler*, wherein the SEC notified the Court that violations of the law would go undetected if the plaintiffs there were without any private right of action, barring private actions under section 17(a) would not "inexorably result in a number of alleged fraudulent practices going undetected by the authorities and unremedied." *Id.* at 315, 105 S.Ct. at 2631. Plaintiffs here can pursue (and indeed are pursuing) the defendants under section 10(b) of the Securities Exchange Act of 1934. In fact, the very availability of that avenue of relief has persuaded some courts not to imply a private right of action under section 17(a).[11]

8. *See* Ruder, *Civil Liability Under Rule 10b–5: Judicial Revision of Legislative Intent?*, 57 Nw.U. L.Rev. 627, 656–57 & nn. 132–35 (1963) (discussing Memorandum of Senator Fletcher, agreed to by the Senate, 78 Cong.Rec. 8711–13 (1934), and Amicus Brief of the SEC in *Fratt v. Robinson*, 203 F.2d 627 (9th Cir.1953)).

9. *Compare United States v. Naftalin*, 441 U.S. 768, 776, 99 S.Ct. 2077, 2083, 60 L.Ed.2d 624 (1979) ("investor protection was a constant preoccupation of the legislators" who enacted the Securities Acts) *with Landry v. All American Assurance Co.*, 688 F.2d 381, 389 (5th Cir.1982) ("On its face, § 17(a) does not appear to satisfy the first factor of the *Cort* test, for the statutory language does not suggest a private cause of action. The statute merely represents a general censure of fraudulent practices; only subsequent provisions enable equitable and criminal causes of action.").

10. *See also Touche Ross*, 442 U.S. at 568, 99 S.Ct. at 2485 ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. Instead, our task is limited solely to determining whether Congress intended to create the private right of action asserted.") (citation omitted).

11. *See, e.g., Wachovia Bank & Trust Co., N.A. v. National Student Marketing Corp.*, 650 F.2d 342, 350 n. 19 (D.C.Cir.1980), *cert. denied*, 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981)

There simply is no indication, explicit or implicit, of legislative intent to create a private right of action under section 17(a). Congressional activity concerning the Securities Act's civil remedies is limited to discussions of sections 11 and 12.[12] There is no explicit evidence of an intent to extend civil remedies under section 17(a).[13] What implicit evidence there is cautions against implying any action under section 17(a). The House Committee Report, in a section entitled "Civil Liabilities," indicates that sections 11 and 12 were intended to be the exclusive private remedies under the Act and that imposition of a "greater responsibility" than that provided by sections 11 and 12 "would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public." H.R.Rep. No. 85, 73d Cong., 1st Sess. 10 (1933).[14] The evidence from the Senate is to the same effect. *See* S.Rep. No. 47, 73d Cong., 1st Sess. 6 (1933); 78 Cong.Rec. 8711–13 (1934).

Implying a private right of action under section 17(a) is also inconsistent with the statutory scheme of the Securities Act. The presence of express civil remedies within the same act militates against a finding of Congressional intent to imply further remedies. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981); *Transamerica,* 444 U.S. at 19–21, 100 S.Ct. at 246–47; *Touche Ross,* 442 U.S. at 571–74, 99 S.Ct. at 2486–88.[15] While there were problems with implying a private right of action under Rule 10b–5, doing so under section 17(a) is even more problematic— "the anomalies are multiplied, since the recognition of such a private right of action involves assuming, not that Congress 'casually nullified' in 1934 what it did in 1933, but that Congress 'casually nullified' in a later section what it did in the very same Act." R. Jennings & H. Marsh, *Securities Regulation* 817 (5th ed. 1982).

As Professor Loss has stated, implying a private action under section 17(a) attributes to Congress the rather bizarre intention of enabling a purchaser to avoid the statute of limitations and other procedural limitations which it explicitly provided would apply to private actions under sections 11 and 12. 3 L. Loss, *Securities Regulation* 1785–86 (2d ed. 1961).[16] If Congress had intended to provide a private remedy under section 17(a), sections 11 and 12 would be "entirely superfluous" and "[t]he complex scheme which Congress wove in the express civil liability sections would be totally

---

(avoiding issue of private right of action under section 17(a) because plaintiffs' "claims can be fully satisfied" under section 10(b); recognizing conflict in circuits on whether section 17(a) permits private actions. "Under Section 17(a) of the Securities Act, it has generally been possible to avoid the implied remedy issue, since, in any event, an implied remedy could be based on Rule 10b–5, making the Section 17(a) remedy redundant." H. Bloomenthal, *1982 Securities Law Handbook* ch. 12 (Implied Remedies—Primarily Rule 10b–5), at 198 (1982) (citing *Globus v. Law Research Serv., Inc.,* 418 F.2d 1276 (2d Cir.1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2d Cir.1951)). *Cf. Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 25, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977) ("where congressional purposes are likely to be undermined absent private enforcement, private remedies may be implied in favor of the particular class intended to be protected by the statute").

**12.** *See* H.R.Rep. No. 85, 73d Cong., 1st Sess. 9 (1933) ("Sections 11 and 12 *create and define*

the civil liabilities imposed by the Act and the machinery for their enforcement....") (emphasis added).

**13.** *See* note 12 *supra; see also Landry,* 688 F.2d at 389–90 & n. 34; *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J., concurring), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

**14.** *See* H.R.Rep. No. 85, 73d Cong., 1st Sess. at 21–24; *Texas Gulf Sulphur,* 401 F.2d at 867 (Friendly, J., concurring).

**15.** *See Kimmel v. Peterson,* 565 F.Supp. 476, 486 (E.D.Pa.1983) ("This is especially true here, as section 17(a) is sufficiently broad to cover virtually all activities addressed by sections 11 and 12.").

**16.** *See* S.Rep. No. 47, 73d Cong., 1st Sess. 6 (1933) ("A 5-year limitation is placed upon *all* civil suits ... brought by purchasers.") (emphasis added). This limitation was not applicable to section 17(a). *See* S. 875, 73d Cong., 2d Sess. §§ 9, 13 (1933).

undermined." *Kimmel v. Peterson,* 565 F.Supp. 476, 487 (E.D.Pa.1983).[17]

The three factors which the Supreme Court has emphasized in applying the *Cort v. Ash* test—the statute's language, its legislative history, and its statutory scheme—all point in precisely the same direction: Congress did not intend in 1933 to create a private right of action under section 17(a). "We are reluctant to tamper with an enforcement scheme crafted with such evident care.... 'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'" *Russell,* 473 U.S. at 147, 105 S.Ct. at 3093 (quoting *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. at 97, 101 S.Ct. at 1583). The Securities Act of 1933 contained such an integrated scheme; unless the plaintiffs can establish that Congress later preserved a judicially-created private remedy under section 17(a), any decision to create such a right of action must be left to future congressional action.

Our search for evidence of congressional intent is not limited to the legislative history of the Congress which originally passed the statute in question; nor is our analysis of statutory consistency limited to a review of the statutory scheme at that time. We must also examine Congress' intent when it enacted legislation affecting the statutory scheme of which the section at issue is a part. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

> More precisely, we must examine Congress' perception of the law that it was shaping or reshaping. When Congress enacts new legislation, the question is whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute. When Congress acts in a statutory context in which an implied remedy has already been recognized by the courts, however, the inquiry logically is different. Congress need not have intended to create a new remedy, since one already existed; the question is whether Congress intended to preserve the preexisting remedy.

*Id.* at 378–79, 102 S.Ct. at 1839 (footnote omitted).

In holding that Congress intended to preserve an implied private remedy when it amended the Commodity Exchange Act (CEA), the *Curran* Court relied upon the high degree of uniformity in the judicial precedents implying a private right of action at that time. This uniformity of opinion constituted "the contemporary legal context" which the Court found Congress had ratified. *Id.* at 379–82 & nn. 62–66, 102 S.Ct. at 1840–41 & nn. 62–66.[18]

---

**17.** *See also Landry,* 688 F.2d at 390 ("The creation of an implied cause of action [under section 17(a)] would effectively frustrate the carefully laid framework of the Act."); *Roskos v. Shearson/American Express, Inc.,* 589 F.Supp. 627, 631 (E.D.Wis.1984) ("To permit a private right of action under § 17(a) would cause the statutory and judicially-crafted restrictions on § 10(b) of the 1934 Act and §§ 11 and 12 of the 1933 Act to atrophy and fall away as securities fraud cases hustled in the back door of § 17.").

**18.** As the Supreme Court stated in *Curran:*

> In view of the absence of any dispute about the proposition prior to the decision of *Cort v. Ash* in 1975, it is abundantly clear that an implied cause of action under the CEA was a part of the "contemporary legal context" in which Congress legislated in 1974. In that context, the fact that a comprehensive reexamination and significant amendment of the CEA left intact the statutory provisions under which the federal courts had implied a cause

of action is itself evidence that Congress affirmatively intended to preserve that remedy. A review of the legislative history of the statute persuasively indicates that preservation of the remedy was indeed what Congress actually intended.

*Id.* at 381–82, 102 S.Ct. at 1840–41 (citation and footnote omitted). *See also Herman & MacLean v. Huddleston,* 459 U.S. 375, 380 & n. 10, 103 S.Ct. 683, 686 & n. 10, 74 L.Ed.2d 548 (1983) (because the courts had "consistently recognized for more than 35 years" an implied private right of action under section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, the issue was "simply beyond peradventure"); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975) (Twenty-five years after the first district court held that there was an implied right of action under Rule 10b–5 of the Securities Exchange Act of 1934, the Court "confirmed with virtually no discussion the overwhelming consensus of the District Courts and Courts of Appeals that

We therefore must examine the contemporary legal context prevailing at the time of any comprehensive reexamination of or significant amendment to the Securities Act of 1933. While we may infer that Congress intended—by its silence—to reaffirm any remedy which existed by overwhelming judicial consensus, we recognize that implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best. *Touche Ross,* 442 U.S. at 571, 99 S.Ct. at 2486.

■ No overwhelming consensus ever existed in section 17(a) precedent. The cases which addressed whether a private remedy was available under section 17(a) had not consistently and routinely implied a private remedy at the times when Congress undertook any significant analysis of the Securities Acts. On the contrary, the question had been a subject of much dispute.[19]

As plaintiffs point out, the most significant congressional action occurred in 1975 when "Congress comprehensively revised the securities laws ... enact[ing] the 'most substantial and significant revision of this country's Federal securities laws since the passage of the Securities Exchange Act in 1934." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 384–85, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (quoting *Securities Acts Amendments of 1975: Hearings on S. 249 before the Subcommittee on Securities of the Senate Committee on Banking, Housing, and Urban Affairs,* 94 Cong., 1st Sess. 1 (1975)) (footnote omitted). Congress, in that revision, was silent as to section 17(a) of the Securities Act.

Our examination of "Congress' perception of the law that it was ... reshaping," *Curran,* 456 U.S. at 378, 102 S.Ct. at 1839, convinces us that Congress did not intend to "preserve" a private civil remedy as a supplement to the express enforcement provisions of the statute. Plaintiffs contend that the cases refusing to imply a private right of action form an "insignificant minority." This is simply not the case; and, in any event, the state of the law was at least so unclear as to caution against implying a private right of action on the basis of congressional silence.

We note, however, that "the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was." *Brown v. GSA,* 425 U.S. 820, 828, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976) (footnote omitted), *quoted with approval in Curran,* 456 U.S. at 378 n. 61, 102 S.Ct. at 1839 n. 61. We have no indication of what Congress' perception of the law was; we can only guess. Congress may have decided to leave the issue for another day, allowing the courts to resolve their conflicting decisions. Because some courts were avoiding the issue by relying on the apparent overlap between section 10(b) and section 17(a),[20] Congress may well have thought that it need not decide

---

such a cause of action did exist.") (quoted with approval in *Curran,* 456 U.S. at 380, 102 S.Ct. at 1840); *Scientex Corp. v. Kay,* 689 F.2d 879, 884 (9th Cir.1982) ("congressional intent to imply a private right of action may be inferred in a situation where there has been a 'routine and consistent' recognition by the federal courts that such a cause of action exists"; refusing to imply a private remedy under section 16(a) of the Securities Exchange Act of 1934).

**19.** *See, e.g., Gunter v. Hutcheson,* 433 F.Supp. 42, 44–45 (N.D.Ga.1977) ("the question is so uncertain" that some courts "have changed or modified their positions in recent years") (compiling cases); *Reid v. Mann,* 381 F.Supp. 525, 527–28 (N.D.Ill.1974) ("several courts have determined that § 17 was not intended to be used as a basis for private civil remedies [and] ... [t]hose courts which have accepted the existence of a private right of action, [sic] have generally

done so without considering substantively whether the right has any statutory foundation") (compiling cases); *Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 903–05 (D.Me. 1971) (same); *see also* H. Bloomenthal, *1982 Securities Law Handbook* ch. 12 (Implied Remedies—Primarily Rule 10b–5), at 210 (1982) ("The lower courts are *hopelessly divided* as to whether an implied claim can be based on Section 17(a) of the Securities Act.") (citations omitted; emphasis added).

**20.** *See, e.g., Globus,* 418 F.2d at 1283 (citing *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)); *Reid,* 381 F.Supp. at 528 ("[N]either the litigants nor the court have been able to discover a single case in which a private right of action under § 17(a) was permitted where the plaintiff did not also allege a 10b–5 claim for the same conduct.").

whether the statutory scheme of section 17(a) permitted a private right of action. In either case, we cannot say that Congress intended by its silence to preserve a private remedy since the state of the case law in 1975 was insufficiently uniform.[21]

## IV.

■ For all of the foregoing reasons, we affirm the district court's judgment and overrule our prior cases which conflict with this disposition. Because we decide that no private right of action lies under section 17(a), we need not and do not address whether such an action would lie against a municipality.[22] Because we reverse our prior rulings on this certified appeal, the parties will each bear their own costs of appeal. *See* Fed.R.App.P. 39(a).

AFFIRMED.

TANG, Circuit Judge, dissenting:

For thirty-eight years, the implied right of action under § 17(a) has helped protect the investing public from securities fraud and misrepresentation.[1] It has come under increasing attack recently, and today it suffers a mortal blow. The majority persuasively presents the case for reversing the law of this circuit. Other courts have questioned the § 17(a) implied remedy because they sense a Supreme Court trend towards restricting the standards for implying private remedies. Because the majority's decision is neither mandated by precedent nor consonant with the funda-

mental purposes of securities law, I respectfully dissent.

The implied right of action under § 17(a) comports with the mandate of recent Supreme Court cases. The Court set forth a four-part test for measuring the permissibility of implying a private right of action in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Section 17(a) clearly satisfies the first requirement. Bondholders and other members of the investing public are members " 'of the class for whose *especial* benefit the statute was enacted.' " *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088 (quoting *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)).

> The purpose of the bill is to protect the investing public and honest business. The basic policy is that of informing the investor of the facts concerning securities to be offered for sale in interstate and foreign commerce and providing protection against fraud and misrepresentation.

S.Rep. No. 47, 73d Cong., 1st Sess. 1 (1933); 77 Cong.Rec. 2983 (May 8, 1933) (remarks of Sen. Fletcher).

The second factor, evidence of legislative intent "either to create such a remedy or deny one," *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088, also weighs in favor of retaining the implied private remedy. The legislative history of the 1933 Act makes no mention whatsoever of civil liabilities under § 17(a).[2] However, it is significant

---

**21.** The only indication to Congress from the Supreme Court is contained in its footnote in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733–34 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975), in which the Court expressed "no opinion" as to whether an implied right of action exists under section 17(a) and cited cases from the circuit courts which were in conflict.

**22.** *Cf. In re New York City Municipal Securities Litigation*, 507 F.Supp. 169, 187–88 (S.D.N.Y. 1980) (no private right of action against municipality).

**1.** The private right of action was first recognized in *Osborne v. Mallory*, 86 F.Supp. 869 (S.D.N.Y.1949).

**2.** The Civil Liabilities section of the House Committee Report neither explicitly nor implicitly

says that Congress intended §§ 11 & 12 to be the exclusive private remedies under the Act. The legislative history quoted in the majority opinion cautioning against the "imposition of 'greater responsibility' " is taken out of context and inapposite. The paragraph discusses the burden shifting requirements of §§ 11 & 12:

> The provisions throwing upon the defendant in suits under sections 11 and 12 the burden of proof to exempt himself are indispensable to make the buyer's remedies under these sections practically effective. Every lawyer knows that with all the facts in the control of the defendant it is practically impossible for a buyer to prove a state of knowledge or a failure to exercise due care on the part of the defendant. Unless responsibility is to involve merely paper liability it is necessary to throw the burden of disproving re-

that when Congress comprehensively amended federal securities laws in 1975, it left § 17(a) unchanged.

When Congress acts in a statutory context in which an implied remedy has already been recognized by the courts.... the question is whether Congress intended to preserve the pre-existing remedy.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982). In 1975 the Seventh[3] and Fourth[4] Circuits and district courts in the Second, Third, Fourth, Fifth and Ninth Circuits[5] recognized a private § 17(a) remedy.[6] The fact that Congress left the statute unchanged evidences an intent to preserve the remedy.

The third *Cort v. Ash* factor, consistency with the "underlying purposes of the legislative scheme," also favors the implied remedy. The underlying purpose of federal securities laws is to encourage private enforcement.

[W]e repeatedly have emphasized that implied private actions provide "a most effective weapon in the enforcement" of the securities laws and are "a necessary supplement to Commission action."

*Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310, 105 S.Ct. 2622, 2628, 86 L.Ed.2d 215 (1985) (quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964)).

I disagree that the § 17(a) private remedy makes §§ 11 & 12 "entirely superfluous." The latter sections carry an inference of liability and shift the burden of proof to the defendant. Under § 17(a) the burden of proof remains on the plaintiff. Furthermore, "[t]he fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section." *Cannon v. University of Chicago,* 441 U.S. 677, 711, 99 S.Ct. 1946, 1965, 60 L.Ed.2d 560 (1979); *but cf. Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979) (presence of explicit provisions will provide "further justification" for refusing to imply a remedy). The Seventy-Third Congress adopted both the 1933 and 1934 Acts. The Acts contain overlap and duplication which courts have tolerated.[7] In the

sponsibility for reprehensible acts of omission or commission on those who purport to issue statements for the public's reliance. The responsibility imposed is no more nor less than that of a trust. It is a responsibility that no honest banker and no honest business man should seek to avoid or fear. To impose a lesser responsibility would nullify the purposes of this legislation. To impose a greater responsibility, apart from constitutional doubts, would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public.

H.R.Rep. No. 85, 73d Cong., 1st Sess. 9 (1933). Unlike §§ 11 & 12, § 17 does not shift the burden of proof. In this respect, it imposes a lesser standard of responsibility.

**3.** *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1293 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

**4.** *Johns Hopkins University v. Hutton,* 488 F.2d 912 (4th Cir.1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974).

**5.** *See, e.g., Dack v. Shanman,* 227 F.Supp. 26, 28–29 (S.D.N.Y.1964); *Pfeffer v. Cressaty,* 223 F.Supp. 756, 757 (S.D.N.Y.1963); *Thiele v. Shields,* 131 F.Supp. 416, 419 (S.D.N.Y.1955);

*Wulc v. Gulf & Western Ind.,* 400 F.Supp. 99 (E.D.Pa.1975); *Crowell v. Pittsburgh and Lake Erie R. Co.,* 373 F.Supp. 1303, 1310–11 (E.D. 1974); *Dorfman v. First Boston Corp.,* 336 F.Supp. 1089, 1093–96 (E.D.Pa.1972); *Corey v. Bache & Co.,* 355 F.Supp. 1123 (S.D.W.Va.1973) (by implication); *Larson v. Tony's Investments, Inc.,* 46 F.R.D. 612 (M.D.Ala.1969) (by implication); *Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417, 422 (N.D.Cal.1968), *modified,* 430 F.2d 1202 (9th Cir.1970).

**6.** As the majority opinion notes, there was a minority view. *Curran* does not require an "overwhelming majority" for us to give weight to Congressional inaction.

**7.** Much of the information required to be filed by § 12 of the 1934 Act was already required by §§ 6 & 7 of the 1933 Act. Both § 10 of the 1934 Act and § 17 of the 1933 Act prohibit fraudulent conduct. "While some conduct actionable under § 11 may also be actionable under § 1G(b), it is hardly a novel proposition that the 1934 Act and the 1933 Act 'prohibit some of the same conduct.'" *Herman & MacLean v. Huddleston,* 459 U.S. 375, 383, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) (quoting *United States v. Naftalin,* 441 U.S. 768, 778, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979).

overall statutory scheme, the overlap between a private remedy under § 17(a) and §§ 11 & 12 is hardly unusual or significant. It is significant, however, that § 10(b) and Rule 10b–5 contain almost identical language to § 17(a). That there is a private right of action under § 10(b) and Rule 10b–5 is "simply beyond peradventure." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380, 103 S.Ct. 683, 686, 74 L.Ed.2d 548 (1983).

The majority argues that when this court implied a remedy in § 17(a) by reason of its similarity to § 10(b)[8] it was "embarking on a course fraught with danger" because scienter may not be an element of a private action under § 17(a)(2) & (3). *See Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). When purchasing securities, the investing public entrusts its hard-earned money to corporate officials. Investors usually lack a sophisticated understanding of investment products and must rely on the assurances and expertise of these officials. Congress reasonably could have chosen to hold securities sellers to a fiduciary standard of care. That these officials might be held to a mere negligence standard in a private action under § 17(a)(2) & (3) causes me little concern. Nevertheless, if the evil is the negligence standard then we should adjust the standard of care, not eliminate the remedy.

The final *Cort v. Ash* requirement is whether the implied remedy is "traditionally relegated to state law . . . ." *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088. Regulation of misconduct in the securities field is not a peculiar concern of the states. *Cf. Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 35, 100 S.Ct. 242, 255, 62 L.Ed.2d 146 (1979).

The Ninth Circuit has definitively held that a private cause of action exists under § 17(a). *Mosher v. Kane*, 784 F.2d 1385, 1391–92 n. 9 (9th Cir.1986); *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808,

815 (9th Cir.1981). I agree with the court in *Mosher* that recognizing an implied right of action is "the better view." 784 F.2d at 1391–92 n. 9. *Stephenson* and *Mosher* are

> consistent with Congress' intent, repeatedly recognized by the Court, that securities legislation enacted for the purpose of avoiding frauds be construed "not technically and restrictively, but flexibly to effectuate its remedial purposes."

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 217, 96 S.Ct. 1375, 1392, 47 L.Ed.2d 668 (1976) (Blackmun, J., dissenting); *see also Huddleston*, 459 U.S. at 386–87, 103 S.Ct. at 689–90; *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972); *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

The Supreme Court has expressly reserved this issue four times in the last twelve years.[9] That the Court has failed to resolve it, manifests that the question is much closer than the majority makes it seem. The Court recently reaffirmed the private right of action under § 10(b) and Rule 10b–5. *Huddleston*, 459 U.S. 375, 103 S.Ct. at 683. We are prematurely, and perhaps even incorrectly, anticipating the ruling of the Court.

Today's decision invokes in me the reaction expressed by Justice Blackmun in his dissent in *Blue Chips Stamps*, the decision that restricted § 10(b) and Rule 10b–5 actions to actual purchasers and sellers of securities:

> In doing so, the Court exhibits a preternatural solicitousness for corporate well-being and a seeming callousness toward the investing public quite out of keeping, it seems to me, with our own traditions and the intent of the securities laws.

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 762, 95 S.Ct. 1917, 1938, 44

---

**8.** *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981).

**9.** *Bateman Eichler*, 472 U.S. at 304 n. 9, 105 S.Ct. at 2625 n. 9; *Huddleston*, 459 U.S. at 378 n. 2, 103 S.Ct. at 685 n. 2; *International Bhd. of*

*Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733–34 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975).

L.Ed.2d 539 (1975) (Blackmun, J., dissenting).

Perhaps, as commentators suggest, the trend is toward restricting the anti-fraud protections in federal securities law.[10] Today, the 9th Circuit rushes to the forefront. The majority opinion brings an end to the § 17(a) implied private remedy in this circuit. I prefer to adhere to stare decisis and pay my respects to a worthy doctrine at this hour of its premature demise.

**10.** *See, e.g.,* Steinberg, *Section 17(a) of the Securities Act of 1933 After* Naftalin *and* Redington, 68 Geo.L.Rev. 163, 163–65 (1979).